IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ANDREW W. GILPIN                                                                                    PLAINTIFF

v.                                         CASE NO.        11-3091

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                   DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed an applications for DIB and SSI on July 30, 2007, alleging an onset date of April 1, 2006, due to plaintiff's ruptured disc in back (T. 152). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on March 23, 2009. Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 26 years of age and possessed a High School education. The Plaintiff had past relevant work ("PRW") experience as a heating and cooling technician (T. 55).

On August 13, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's stenosis and compression of the nerve root did not meet or equal any Appendix 1 listing. T. 51-52. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work with additional restrictions. T. 52. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the representative occupations of production work, credit authorizers, and interviewers. T. 56.

II.     **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

A.  Step Two

The Plaintiff fist contends that the ALJ committed error in her step two evaluation of the Plaintiff's claims because she did not consider the other impairments to his back. The ALJ found the Plaintiff had severe impairments of stenosis and compression of the nerve root at L5. (T. 51).

At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-

28, 1985 WL 56856 (1985).

The Plaintiff was referred by his treating physician to an orthopedic specialist, Dr. Schlesinger, who saw the Plaintiff on August 14, 2006. After an examination, Dr. Schlesinger's report notes states that he reviewed the multiple images of the MRI of the lumbar spine independent of the radiologist and that his impression was:

> There are multilevel disc herniations. The radiologist did not read this out, but I think there is a herniated disc at L4-5. There is spinal stenosis at L4-5 and L5-S1 to the left. I think there is disc herniation at L4-5 with inferior migration along the medial pedicle of L5. (T. 256).

Dr. Schlesinger also felt that the Plaintiff was not a good candidate for any conservative care (T. 257) and ordered a myelogram/CT scan which was performed on March 30, 2007 which confirmed "severe spinal stenosis at L4-5 bilaterally with a superimposed left L4-5 disc herniation inferiorly migrating down along the pedicle of L5 with compression the left L5 root along its course. At the L5-S1 level, there is lateral recess stenosis with also what seems to be a disc herniation compressing the left S1 root down along the medial pedicle of S1." (T. 252, 258).

Dr. Schlesinger recommended surgical decompression and discectomy which was to encompass both the L4-5 disc but also the L5-S1 disc. (Id.). The Plaintiff was in favor of surgical treatment (Id.) but the Plaintiff had no insurance coverage (T. 279) and was never able to obtain the needed surgery. (T. 238). The Plaintiff did establish by abundant proof that his impairments at the L5-S1 disc was likewise severe.

B.  Step Three

The Commissioner's regulations require him to determine at step three whether the impairment(s) meet or equal an impairment in the listings. *See McCoy v. Schweiker*, 683 F.2d

1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003); *King v. Astrue*, 564 F. 3d 978 (8th Cir. 2009).

The ALJ determined that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (T. 51) The ALJ does not specifically delineate how the Plaintiff does not meet his burden but just states as follows:

> The claimant's stenosis and compression of the nerve root at L5 does not meet or equal the requirements... of Listing 1.04 in that the medical records did not demonstrate compromise of a nerve root or spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight-leg raising test; spinal arachnoiditis; or lumbar spinal stenosis resulting in pseudoclaudication established by finding on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness and resulting in an inability to ambulate effectively as defined in 1.00B2b.

Listing 1.04 provides as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic[1] distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

---

[1][For pain to be distributed in a neuro-anatomic distribution, it should correspond to the area enervated by a specific nerve root in the spine.] *See Barbera v. Commissioner of Social Sec.* 2012 WL 2458284, 12 (E.D.Mich.) (E.D.Mich.,2012)

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

It is not argued that subparagraph B or C is applicable and the court will only look at subparagraph A.

1.  Nerve Root Compression:

Dr. Burnett, the Plaintiff treating physician, referred the Plaintiff to Dr. Schlesinger, a neurologist, who first diagnosed the Plaintiff with multiple disc herniations (T. 256) and significant neurologic deficit (T. 257) in August 2006. After a myelogram/CT scan Dr. Schlesinger stated that the Plaintiff had "severe spinal stenosis at L4-5" with a disc herniation at L-4-5 with the nerve root compressed along its course. He also stated that the L5-S1 had a lateral stenosis "with what seems to be a disc herniation compressing the left S1 root down along the medial pedicle of S1." (T. 252).

   a.  Neuro-anotomic pain

On July 30, 2006 the Plaintiff presented to the Baxter Regional Medical Center complaining of low back pain for six month (Plaintiff was injured in December 2005) radiating down his left leg which had become worse recently with numbness in his foot. (T. 216). This complaint of pain persist throughout the Plaintiff's medical records.

   b.  Limitation of motion of the spine:

Dr. Tammy Tucker performed a physical examination of the Plaintiff on July 1, 2008 and found that the Plaintiff had "Limited Motion-Spine noted to flexion more than extension and limited 30-40% in all planes." (T. 246). This was also the finding of Dr. Schlesinger in August

2006. T. 254.

### c. Motor Loss

The regulation require that motor loss be exhibited by atrophy with associated muscle weakness or muscle weakness.  Dr. Tucker's examination of July 1, 2008 showed that the "left calf measure 14 cm with marked atrophy and muscle delineation lost".  She also noted that "L2-L4 disc level-quadricaps strength-decreased on the left" Dr. Tucker also noted that the Plaintiff had "decreased vibratory sense on the left almost absent" and "absent monofilamint over the great toe and foot to almost the mid foot" and that the Plaintiff could not do heel walking without support for more than "a step or 2". (T. 246).

### d. Straight Leg Test

Dr. Schlesinger administered a Straight Leg Test to the Plaintiff during his examination on August 14, 2006 which was "positive on the left and negative on the right". T. 255.

A consultive examination was performed by Dr. Oberlander on September 26, 2007 but Dr. Oberlander report does not address any of the requirements listed above except that he noted "normal  sensory appreciation throughout" and that he did note weakness in the left leg. He concluded that his findings were consistent with a left sided L5 sciatic nerve injury. T. 223.  The ALJ does not reference how Dr. Oberlander's opinions justify his reasoning at this step.   It is impossible for the court to tell exactly how the ALJ arrived at his conclusion that the Plaintiff did not establish that he met the disability requirements of Listing 1.04.

## C.  RFC

The ALJ determined that the Plaintiff had the RFC to perform sedentary work except the claimant has occasional postural limitations, meaning that the claimant can only occasionally

climb ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, or crawl, and the claimant must be able to stand and/or sit alternate positions hourly. (T. 52).

    RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

    The ALJ stated that the state consultant's opinion was given "great weight". (T. 54). The Physical RFC assessment that the ALJ gives great weight to is the opinion of Dr. Steve Owens dated October 11, 2007. Dr. Owen was of the opinion that the Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently. That he could stand and/or walk for at least 2 hours and that he could sit for 6 hours in an 8 hour workday. He found that the Plaintiff had no limitations on his ability to push and/or pull with his lower extremities. T. 226. Paragraph 6 of the SSA for ask the Doctor to explain how and why the evidence supports your conclusion and to

cites specific facts upon which his conclusion is based. Dr. Owens left this paragraph blank. (Id.) Dr. Owens felt that the Plaintiff only had occasional Postural Limitations but again offered no explanation documenting his opinion. (T. 227). Dr. Owens also felt that the Plaintiff would have no environmental limitations but it is hard to see how an individual with multiple disc herniations could work in an environment that was vibrating. (T. 229).

We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. *Id. Cox v. Barnhart* 345 F.3d 606, 610 (C.A.8 (Ark.),2003). Therefore, given the limited range of motion in plaintiff's lumbar spine and loss of sensation in his left lower extremity, and the abundant medical evidence of the Plaintiff's treating doctors the court does not find Dr. Owens' opinion to constitute substantial evidence of plaintiff's RFC.

The ALJ totally discounted the MSS of Dr. Tucker, the Plaintiff's treating physician. The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000). In this case, however, while Dr. Tucker did see the Plaintiff, it appears that she only saw him one time and rendered her opinion after her examination. While Dr. Tucker's opinion is very detailed she still only saw the Plaintiff on one occasion.

The ALJ did not obtain any Physical RFC from the Plaintiff's long time treating

physician, Dr. Burnett, or the treating specialist, Dr. Schlesinger. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984). "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir.2005)." *Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir.2010).

The court believes remand is necessary to allow the ALJ to submit questions to the Plaintiff's treating physicians concerning his ability to do work related activities. The court further believes that a more complete explanation is required concerning the ALJ determination that the Plaintiff did not meet the listing requirements of 1.04.

**IV.     Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated this November 19, 2012.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE